# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

CHRISTOPHER A. FEDUCCIA,

                Plaintiff,

    v.

I.C.E. SERVICES, INC., *et al.*,

                Defendants.

Case No. 3:24-cv-00276-SLG

## <u>ORDER RE MOTION TO DISMISS</u>

Before the Court at Docket 17 is Defendants Thomas J. Bourdon and I.C.E. Services, Inc.'s Motion to Dismiss Relator's Complaint. Defendants assert that the Complaint should be dismissed with prejudice under Federal Rules of Civil Procedure 12(b)(6) and 9(b).[1] The motion has been fully briefed.[2] Oral argument was held on July 29, 2025.[3]

The Court has taken judicial notice of the following four documents that the Small Business Administration ("SBA") released following the creation of the Paycheck Protection Program:

---

[1] Docket 17-1 at 43.

[2] Docket 21; Docket 26.

[3] Docket 39.

- First, the Court has taken judicial notice of SBA Form 3509's PPP Loan Necessity Questionnaire (For-Profit Borrowers) dated October 2020 at Docket 27-1.[4] The questionnaire required recipients of PPP loans with an original principal amount of $2 million or greater to answer questions and provide documentation concerning the borrower's business activity and liquidity.[5]

- Second, the Court has taken judicial notice of the SBA's July 29, 2021 Frequently Asked Question ("FAQ") 69 related to the PPP at Docket 30-2.[6] FAQ 69 explains why the SBA discontinued the use of the Form 3509 (and Form 3510) Loan Necessity Questionnaire.[7]

- Third, the Court has taken judicial notice of the SBA's December 9, 2020 PPP Loan FAQs.[8] The SBA's December 2020 FAQs contain answers to a variety of questions concerning eligibility requirements for PPP loans.[9]

---

[4] Docket 27 at 1.

[5] Docket 27-1 at 2–10.

[6] Docket 30-2. Docket 39.

[7] Docket 30-2 at 1.

[8] Docket 40. *See* U.S. Small Business Administration, Paycheck Protection Program Loans Frequently Asked Questions (FAQs) (Dec. 9, 2020), https://www.sba.gov/sites/default/files/2020-12/Final%20PPP%20FAQs%20%28December%209%202020%29-508.pdf.  Relator made an oral motion for judicial notice of this document during oral argument. Docket 39. Defendants did not oppose Relator's request for judicial notice but assert that only FAQ Nos. 39, 46, and 53 are relevant to the claims and motion to dismiss in this case. Docket 38 at 2.

[9] *See* U.S. Small Business Administration, Paycheck Protection Program Loans Frequently Asked Questions (FAQs).

Case No. 3:24-cv-00276-SLG, *Feduccia v. I.C.E. Services, Inc., et al.*
Order re Motion to Dismiss
Page 2 of 23

- Fourth, the Court has taken judicial notice of the SBA's Form 2483 PPP Borrower Application Form as it existed in April 2020.[10]

For the reasons set forth below, the motion to dismiss will be granted and the Complaint dismissed with leave to amend with respect to Counts 1, 2, and 4.

## BACKGROUND

The False Claims Act ("FCA"), 31 U.S.C. §§ 3729–3733, was enacted in 1863 to protect the federal government from false claims submitted by government contractors.[11] "The FCA creates civil liability for 'any person who (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or] (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim.'"[12] "A private person, known as a *qui tam* relator, may bring a civil action under the FCA in the name of the U.S. government."[13] "The government may proceed with the action or decline to take over the action; if the government declines, then the relator can still pursue the action."[14]

---

[10] The Court granted Relator's oral motion for judicial notice of this document during oral argument. Docket 39. Docket 39. *See* U.S. Small Business Administration, Paycheck Protection Program Borrower Application Form, SBA Form 2483 (04/20) (Apr. 2020) https://home.treasury.gov/system/files/136/Paycheck-Protection-Program-Application-3-30-2020-v3.pdf.

[11] *See Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 781 (2000).

[12] *United States v. Allergan, Inc.*, 46 F.4th 991, 993 (9th Cir. 2022) (alteration in original) (quoting 31 U.S.C. § 3729(a)(1)).

[13] *Id.* at 994 (citing 31 U.S.C. § 3730(b)).

[14] *Id.* (citing 31 U.S.C. § 3730(b)(4)).

Case No. 3:24-cv-00276-SLG, *Feduccia v. I.C.E. Services, Inc., et al.*
Order re Motion to Dismiss
Page 3 of 23

In March 2020, Congress passed and the President signed the Coronavirus Aid, Relief, and Economic Security ("CARES") Act.[15] Section 1102 of that Act amended the Small Business Act, 15 U.S.C. § 631 *et seq.*, by creating the Paycheck Protection Program ("PPP"), a program providing forgivable loans to small businesses so as to permit those businesses to keep their employees on their payroll, rather than lay them off during the COVID-19 pandemic.[16] A business seeking a PPP loan had to certify in good faith "that the uncertainty of current economic conditions makes necessary the loan request to support the ongoing operations of the eligible recipient" and "that [PPP] funds will be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments."[17] Only small businesses that "employ[ed] not more than the greater of" "500 employees" or a "size standard in number of employees established by the [SBA] for the industry in which the business . . . operates" were eligible to apply for PPP loans.[18]

Following the enactment of the CARES Act, the SBA created a PPP Borrower Application form that included a requirement that the applicant certify that "[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant" and a certification that "the information

---

[15] Pub. L. No. 116-136, 134 Stat. 281 (2020).

[16] *Id.* § 1102.

[17] 15 U.S.C. § 636(a)(36)(G)(i)(I–II) (enacted by CARES Act § 1102(a)(2)).

[18] 15 U.S.C. § 636(a)(36)(D)(i).

Case No. 3:24-cv-00276-SLG, *Feduccia v. I.C.E. Services, Inc., et al.*
Order re Motion to Dismiss
Page 4 of 23
Case 3:24-cv-00276-SLG     Document 49     Filed 11/21/25     Page 4 of 23

provided in [the] application and the information provided in all supporting documents and forms is true and accurate in all material respects."[19]

During 2020 and 2021, the SBA published multiple guidance documents, questionnaires, and "FAQs."[20]  In late April 2020, the SBA clarified that borrowers must consider "their current business activity and their ability to access other sources of liquidity sufficient to support their ongoing operations in a manner that is not significantly detrimental to the business."[21]  On May 13, 2020, the SBA advised PPP borrowers of its intent to review each loan greater than or equal to $2 million to determine whether the borrower had an adequate basis for making the required necessity certification.[22]

On December 17, 2024, Relator Christopher Feduccia initiated this FCA action on behalf of the United States against I.C.E. Services, Inc. ("I.C.E.") and Thomas J. Bourdon, the President and CEO of I.C.E. Services (collectively,

---

[19] Docket 1 ¶¶ 29–30 (quoting SBA Form 2483, *supra* note 10, at 2).

[20] *See* Docket 1 ¶¶ 25, 27, 28.

[21] Docket 1 ¶ 25 (citing U.S. Small Business Administration, Paycheck Protection Program Loan Necessity Questionnaire, Frequently Asked Questions (FAQs) (Jul. 29, 2021), https://www.sba.gov/sites/default/files/2021-07/FINAL%20FAQ%20Update%207.29.21-508.pdf, at 15 (Question 31)).

[22] Docket 1 ¶ 28 (citing U.S. Small Business Administration, Paycheck Protection Program Loan Necessity Questionnaire, Frequently Asked Questions (FAQs) (May 13, 2020), https://www.sba.gov/sites/default/files/2023-03/Paycheck-Protection-Program-Frequently-Asked-Questions_05%2013%2020_2.pdf, at 16 (Question 46)). FAQ 46 was later deleted on July 29, 2021, due to the discontinuance of the use of the Loan Necessity Questionnaire (SBA Form 3509 or 3510).  *See* SBA PPP FAQs July 2021, *supra* note 21, at 21 n. 57 (Question 46).

Case No. 3:24-cv-00276-SLG, *Feduccia v. I.C.E. Services, Inc., et al.*
Order re Motion to Dismiss
Page 5 of 23

Case 3:24-cv-00276-SLG    Document 49    Filed 11/21/25    Page 5 of 23

"Defendants").[23]   Relator alleges that Defendants made false certifications on I.C.E.'s PPP application, thus wrongfully receiving a PPP loan of approximately $5.3 million on April 11, 2020.[24]   I.C.E.'s PPP loan of approximately $5.7 million was forgiven on July 22, 2021.[25]

I.C.E. is a business providing catering, dining, and housing services for oil and gas companies on the North Slope of Alaska.[26]   According to the Complaint, one of I.C.E.'s minority investors is Pt Arctic Fund I, LP ("Pt Arctic Fund").[27]   In 2019, Pt Arctic Fund issued a $5,332,170 recallable distribution to its investors "relating to I.C.E. Services."[28]   As of December 31, 2023, this distribution had not been recalled.[29]   This is one of several examples in the Complaint that form the basis for Relator's assertion that I.C.E. did not truthfully certify that it faced current economic uncertainty when it submitted its PPP loan application.

---

[23] Docket 1 ¶¶ 1–12.  Plaintiff's Complaint alleges that Mr. Bourdon is "likely [the] company official who approved, signed, and submitted I.C.E. Services' PPP loan application." Docket 1 ¶ 12.

[24] Docket 1 ¶¶ 32–34.  Relator's Complaint alleges that Defendants received the loan in April 2021.  This appears to be a typo. According to Defendants' motion to dismiss, Defendants received the loan in April 2020.  *See* Docket 17-1 at 12.  The Court will consider April 11, 2020, as the accurate date that Defendants received the PPP loan.

[25] Docket 1 ¶ 32.

[26] Docket 1 ¶¶ 66, 68, 69; *see also* Docket 17-1 at 11.

[27] Docket 1-1 at 1.

[28] Docket 1 ¶ 35 (citing Docket 22-1 (Pt Arctic Fund I, LP – Annual Report (2019) at 4).

[29] *See* Docket 1 ¶ 42.

Case No. 3:24-cv-00276-SLG, *Feduccia v. I.C.E. Services, Inc., et al.*
Order re Motion to Dismiss
Page 6 of 23

The Complaint alleges four counts. Count 1 alleges that both Defendants submitted a PPP loan application containing false certifications in violation of 31 U.S.C. § 3729(a)(1)(A).[30] Count 2 alleges that both Defendants "knowingly made or caused to be made a false records or statements to support a false claim submitted to the SBA" in violation of 31 U.S.C. § 3729(a)(1)(B).[31] Count 3 alleges that both Defendants conspired to commit violations of the FCA in violation of 31 U.S.C. § 3729(a)(1)(C).[32] Count 4 alleges that I.C.E. violated 31 U.S.C. § 3729(a)(1)(G) "by failing to . . . repay or refund the movies received" from the United States in the PPP loan.[33]

Relator asserts that Defendants violated the FCA by making two false statements on the April 2020 PPP loan application. The first allegedly false statement was when Defendants certified that "the uncertainty of current economic conditions makes necessary the loan request to support [the borrower's] ongoing operations."[34] The second allegedly false statement in the PPP application was when Defendants "certif[ied] that the information provided in this application and

---

[30] Docket 1 ¶¶ 71–76.

[31] Docket 1 ¶¶ 78–82.

[32] Docket 1 ¶¶ 84–88. At oral argument, Relator agreed to the dismissal of the conspiracy count. Thus, Count 3 is dismissed without leave to amend.

[33] Docket 1 ¶¶ 90–95.

[34] Docket 1 ¶ 24 (necessity certification language) (alteration in original); *see also* Docket 1 ¶ 29 (alleging that an I.C.E. representative, "presumably Bourdon," had to have made the certification in order to receive the loan).

Case No. 3:24-cv-00276-SLG, *Feduccia v. I.C.E. Services, Inc., et al.*
Order re Motion to Dismiss
Page 7 of 23
Case 3:24-cv-00276-SLG    Document 49    Filed 11/21/25    Page 7 of 23

the information provided in all supporting documents and forms is true and accurate in all material respects."[35]

On March 17, 2025, the United States filed a notice of election stating it was declining to intervene in this action.[36]

On April 22, 2025, Defendants filed their motion to dismiss.[37]  On May 16, 2025, the United States filed a statement of interest opposing Defendants' motion to dismiss insofar as it seeks dismissal based on the alleged unconstitutionality of the *qui tam* provisions of the FCA.[38]

This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this action presents claims arising under federal law.

## LEGAL STANDARDS

### I.     Rule 12(b)(6) and Rule 8(a)

Under Rule 8(a), a complaint must contain a "short and plain statement of a claim showing that the [plaintiff] is entitled to relief."[39]  If a complaint fails to do this, the defendant may move to dismiss it under Rule 12(b)(6).[40]

---

[35] Docket 1 ¶ 30 (alteration in original).

[36] Docket 12 at 1 (United States' Notice of Election to Decline Intervention); *see also* Docket 13 at 1.

[37] Docket 17.

[38] Docket 23 (United States' Statement of Interest).  However, "[t]he United States takes no position on the other arguments raised by Defendants in their Motion." Docket 23 at 2.

[39] Fed. R. Civ. P. 8(a).

[40] Fed. R. Civ. P. 12(b)(6).

Case No. 3:24-cv-00276-SLG, *Feduccia v. I.C.E. Services, Inc., et al.*
Order re Motion to Dismiss
Page 8 of 23

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[41] A plaintiff is not required to prove his case in the complaint, but a complaint, including an FCA complaint, must "state 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the misconduct alleged].'"[42] A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[43]

When deciding a Rule 12(b)(6) motion, a court considers only the complaint, materials incorporated into the complaint by reference, and matters on which a court has taken judicial notice.[44] "In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."[45]

---

[41] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[42] *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (alterations in original) (quoting *Twombly*, 550 U.S. at 556) (holding that FCA claims "must, in addition to pleading with particularity, also plead plausible allegations").

[43] *Iqbal*, 556 U.S. at 678.

[44] *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007))

[45] *Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (emphasis in original) (citations omitted).

Case No. 3:24-cv-00276-SLG, *Feduccia v. I.C.E. Services, Inc., et al.*
Order re Motion to Dismiss
Page 9 of 23

When a motion to dismiss for failure to state a claim is granted, a court "should freely give leave when justice so requires."[46] However, "leave may be denied if amendment of the complaint would be futile."[47] Futility exists when "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."[48]

## II.  Rule 9(b)

"Because they involve allegations of fraud, *qui tam* actions under the FCA must meet not only the requirement of Rule 8, but also the particularity requirements of Rule 9."[49] Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."[50] But the rule also provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."[51]

"Rule 9(b) ensures that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that

---

[46] Fed. R. Civ. P. 15(a).

[47] *Gordon v. City of Oakland*, 627 F.3d 1092, 1094 (9th Cir. 2010) (citing *Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir. 1988)).

[48] *Schreiber Distributing Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (citation omitted).

[49] *United States v. Corinthian Colleges*, 655 F.3d 984, 992 (9th Cir. 2011).

[50] Fed. R. Civ. P. 9(b).

[51] *Id.*

Case No. 3:24-cv-00276-SLG, *Feduccia v. I.C.E. Services, Inc., et al.*
Order re Motion to Dismiss
Page 10 of 23

Case 3:24-cv-00276-SLG     Document 49     Filed 11/21/25     Page 10 of 23

they have done anything wrong."[52] "To meet this standard, [a plaintiff's] complaint must 'identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false.'"[53] "Allegations of fraud based on information and belief may suffice as to matters peculiarly within the opposing party's knowledge, so long as the allegations are accompanied by a statement of the facts upon which the belief is founded."[54]

## DISCUSSION

Defendants assert that Counts 1, 2, and 4 should each be dismissed for three reasons: (1) Relator's claims do not meet the heightened pleading standard required for alleging fraud pursuant to Federal Rule of Civil Procedure 9(b); (2) Plaintiff's FCA Relator status is unconstitutional under the Appointments Clause of the Constitution; and (3) Relator's claims are barred because Relator is not an "original source" of material information that is not already publicly disclosed.[55]

The Court first addresses the sufficiency of the Complaint's allegations in Counts 1 and 2, and then Count 4, followed by Defendants' constitutional and public disclosure arguments.

---

[52] *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

[53] *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (quoting *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)).

[54] *Wood v. Tandem Comput. Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987).

[55] Docket 17-1 at 10–11. Count 3, conspiracy to violate the FCA, is dismissed with Relator's concurrence. *See supra* note 32.

Case No. 3:24-cv-00276-SLG, *Feduccia v. I.C.E. Services, Inc., et al.*
Order re Motion to Dismiss
Page 11 of 23

Case 3:24-cv-00276-SLG    Document 49    Filed 11/21/25    Page 11 of 23

I. **Count One (submission of false claims) and Count Two (creation of a false record or statement material to a false claim)**

To adequately assert a false certification claim pursuant to 31 U.S.C. § 3729(a)(1)(A) and 31 U.S.C. § 3729(a)(1)(B), a relator must allege: "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due."[56]

Defendants maintain that the Complaint "fails to sufficiently allege that (1) Defendants acted knowingly (or with reckless disregard), (2) that this economic uncertainty check-box was material to the SBA, or (3) to state with particularity how the alleged lack of economic uncertainty supports each of his four [FCA] counts."[57]

a. **Element One: False Statement**

First, Relator must allege with particularity a false statement or fraudulent course of conduct. Relator asserts that the Complaint adequately alleges Defendants' false statements with particularity by "identif[ying] the two false statements on the PPP application that form the basis for each of the causes of action Relator alleges against Defendants."[58] Further, Relator asserts that the "Complaint contains multiple allegations explaining how Defendants misrepresented the economic uncertainty of I.C.E.'s operations."[59]

---

[56] *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 997 (9th Cir. 2010) (quoting *United States ex rel. Hendow v. University of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006)).

[57] Docket 26 at 7.

[58] Docket 21 at 15.

[59] Docket 21 at 16.

Case No. 3:24-cv-00276-SLG, *Feduccia v. I.C.E. Services, Inc., et al.*
Order re Motion to Dismiss
Page 12 of 23

Case 3:24-cv-00276-SLG    Document 49    Filed 11/21/25    Page 12 of 23

In their reply, Defendants focus on the Counts at the end of the Complaint and not on the preceding factual allegations in the Complaint nor the explanations in Relator's opposition memorandum to the motion to dismiss.[60] The Court agrees with Defendants that although the Counts incorporate all the prior paragraphs of the Complaint,[61] the Counts themselves do not specify what constitutes the allegedly false certifications that form the basis of the Counts 1 and 2.

Neither Count 1 nor Count 2 clearly alleges that it is the economic uncertainty certification and the accuracy of the economic uncertainty certification on the April 2020 PPP loan application that form the bases of each claim. Rather, Paragraphs 71 to 76 of Count 1 and Paragraphs 78 to 82 of Count 2 broadly provide a formulaic recitation of the elements of the respective claims, stating that Defendants made unspecified false statements or representations on unspecified applications.[62] While Relator's opposition to the motion to dismiss articulates that the economic uncertainty certification and related certification of its accuracy on

---

[60] Docket 26 at 19–20.

[61] *See* Docket 1 ¶¶ 71, 77.

[62] *See e.g.*, Docket 1 ¶ 73 ("Defendants' knowing false certifications on the PPP loan applications and PPP loan forgiveness applications at issue herein . . . ."); Docket 1 ¶ 79 ("Defendants knowingly made or caused to be made false records or statements to support a false claim submitted to the SBA for approval of forgiveness of a PPP loan.").

*See* Docket 1 ¶¶ 71–76, 78–82.

Case No. 3:24-cv-00276-SLG, *Feduccia v. I.C.E. Services, Inc., et al.*
Order re Motion to Dismiss
Page 13 of 23

the April 2020 PPP loan application are the allegedly false statements,[63] the Court cannot consider this explanation for Rule 12(b)(6) purposes.[64]

In sum, Counts 1 and 2 are both conclusory restatements of the FCA that fail to state with "particularity the circumstances constituting fraud" under Rule 9(b). Counts 1 and 2 do not clearly limit the false certification claim to the economic necessity certification in I.C.E.'s April 2020 PPP application.

To the contrary, both Counts appear to assert that Defendants also made a false claim in a separate application when Defendants applied to have I.C.E.'s loan forgiven, which occurred on July 22, 2021.[65] However, the Complaint does not contain any factual allegations regarding what false certifications were made by Defendants in any loan forgiveness application that Defendants may have submitted before the PPP loan was forgiven on July 22, 2021.

### b. Element Two: Scienter

In Relator's opposition to the motion to dismiss, he asserts that Defendants knowingly or recklessly made a false claim or statement because "Defendants knew about the economic uncertainty prerequisite to obtaining its PPP loan" and "Defendants knew (or recklessly disregarded) I.C.E.'s financial information . . .

---

[63] Docket 21 at 20–21.

[64] *See Schneider*, 151 F.3d at 1197 n.1.

[65] Docket 1 ¶¶ 73, 79.

Case No. 3:24-cv-00276-SLG, *Feduccia v. I.C.E. Services, Inc., et al.*
Order re Motion to Dismiss
Page 14 of 23

showing I.C.E. was experiencing no economic uncertainty in its operations at the time it applied for the PPP loan."[66]

But these assertions are not set forth with specificity in Relator's Complaint. As Defendants correctly note in their reply, "Relator has not done the work to plead with sufficient particularity as it relates to Defendants' knowledge–not Pt Capital or Pt Arctic Fund's knowledge–and cannot amend his Complaint through his Opposition by adding allegations that do not appear in the Complaint."[67]

In the scienter portion of Relator's opposition brief, the only paragraphs of the Complaint that Relator references are Paragraphs 25 through 27, which note the SBA's late April 2020 guidance concerning liquidity and good faith certification.[68]  However, this guidance was issued after Defendants applied for their PPP loan, which was approved on April 11, 2020, and thus cannot form the basis for Defendants' scienter at the time of their loan application.[69]  Likewise, the fact that "[i]n late 2020, the SBA introduced a questionnaire for PPP loans of $2 million or more"[70] is not relevant to Defendants' scienter in early April 2020.

---

[66] Docket 21 at 20–21.

[67] Docket 26 at 17 (citing *Schneider*, 151 F.3d at 1197 n.1).

[68] Docket 21 at 20–22. Paragraphs 25 through 27 of the Complaint are focused on the April 23 and April 28, 2020 SBA guidance.  *See* Docket 1 ¶¶ 25–27.

[69] *See supra* note 24.

[70] Docket 21 at 21.

Case No. 3:24-cv-00276-SLG, *Feduccia v. I.C.E. Services, Inc., et al.*
Order re Motion to Dismiss
Page 15 of 23

Relator must plausibly allege facts relating to Defendants' scienter in early April 2020 when Defendants applied for the loan.

Another deficiency with regard to the scienter element is that the Complaint focuses on the knowledge and actions or inactions of third parties and minority shareholders, Pt Arctic Fund and Pt Capital, not I.C.E. or Mr. Bourdon, who are the only named defendants in this case. For example, the Complaint contains the following allegation about Pt Arctic Fund's knowledge and actions:

> Pt Arctic Fund's General Partner has every motivation for the portfolio companies of Pt Arctic Fund to acquire PPP funds instead of making a capital call in order to maximize ROI. Specifically, if the General Partner, which owns 18% of Pt Arctic Fund, can generate a preferred rate of return of 8% or more (compounded annually) for Pt Arctic Fund, the General Partner becomes eligible to receive a bonus of 20% of distributions from Pt Arctic Fund, commonly referred to as a "carried interest," in addition to its 18% equity stake in Pt Arctic Fund.[71]

Although allegations of "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally,"[72] Counts 1 and 2 of the Complaint fail to adequately plead the scienter requirement of an FCA false certification claim.

//

//

//

---

[71] Docket 1 ¶ 43. The Court notes that the accompanying allegations at Docket 1 ¶¶ 44–48 all concern the scienter of Pt Capital and Pt Arctic Fund, not Defendants' knowledge or actions. *See also* Docket 1 ¶ 35 ("Pt Arctic Fund issued a 'recallable distribution[.]'"); Docket 1 ¶ 38 ("Pt Arctic Fund could have recalled the $5.3 million distribution 'relating to ICE Services' and invested it back into I.C.E. Services[.]").

[72] Fed. R. Civ. P. 9(b).

Case No. 3:24-cv-00276-SLG, *Feduccia v. I.C.E. Services, Inc., et al.*
Order re Motion to Dismiss
Page 16 of 23

### c. Element Three: Materiality

Relator asserts the Complaint sufficiently alleges that Defendants' false certification was material to the government's decision.[73]  In his opposition to the motion to dismiss, Relator explains that this allegedly false certification was material to the government's decision to loan I.C.E. $5.3 million because "the government would have denied claims or applications had it known the defendants intended not to comply with applicable rules."[74]  While this may seem self-evident, it is not pleaded in Counts 1 or 2 of the Complaint.[75]

In sum, Counts 1 and 2 fail to sufficiently allege each of the three requisite elements of an FCA false certification claim.

## II.     Count 4 (Reverse FCA Claim)

The reverse false claims provision of the FCA is violated if someone "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government."[76]  The FCA

---

[73] Docket 21 at 22–26.

[74] Docket 21 at 22–24.

[75] *See* Docket 1 ¶¶ 70–82.  The Court also notes that in his opposition, Relator points to Paragraphs 73, 74, 93, and 94 of the Complaint as satisfying the materiality standard under Ninth Circuit case law.  Docket 21 at 23–25.  However, these conclusory paragraphs are merely restatements of the law itself, not factual allegations to support materiality.

[76] 31 U.S.C. § 3729(a)(1)(G).

Case No. 3:24-cv-00276-SLG, *Feduccia v. I.C.E. Services, Inc., et al.*
Order re Motion to Dismiss
Page 17 of 23

defines an "obligation" as "an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment."[77]

According to Relator, Count 4 of the Complaint states a viable reverse-FCA claim by alleging that "I.C.E. retained its PPP loan despite financial information contained in internal reports that projected increasing revenues and stable operations."[78]

However, Count 4 does not clearly specify when Relator is asserting that I.C.E.'s obligation to return the loan proceeds to the government arose. Count 4 of the Complaint simply alleges that "[u]pon receipt of improperly obtained PPP loan forgiveness funds, Defendant I.C.E. Services had an obligation to repay and refund to the Government the amounts paid by the Government."[79]

It is not until Relator's opposition to the motion to dismiss that Relator identifies when he alleges the obligation to repay arose: "[T]he obligation arises under the SBA's April 23, 2020 guidance, which required borrowers who could not meet the economic uncertainty certification to return their PPP funds by May 18,

---

[77] 31 U.S.C. § 3729(b)(3).

[78] Docket 21 at 27 (citing Docket 1 ¶¶ 35–37, 42, 66).

[79] Docket 1 ¶ 91.

Case No. 3:24-cv-00276-SLG, *Feduccia v. I.C.E. Services, Inc., et al.*
Order re Motion to Dismiss
Page 18 of 23

Case 3:24-cv-00276-SLG    Document 49    Filed 11/21/25    Page 18 of 23

2020."[80]  Just as with Counts 1 and 2, the lack of specificity in Count 4 cannot be cured by the opposition to the motion to dismiss and must be dismissed.[81]

## III.  The Constitutionality of the *qui tam* provision of the FCA

Defendants' second asserted basis for dismissal of this action is that the *qui tam* provision of the FCA is unconstitutional because it violates the Appointments Clause of Article II of the U.S. Constitution.[82]

The Ninth Circuit in *Kelly v. Boeing Co.*, ruled that the FCA's *qui tam* provision does not violate the Appointments Clause.[83]  This binding Ninth Circuit precedent controls in this Court.  Defendants do not even mention the constitutional argument or *Kelly* in their reply brief.  Defendants' motion to dismiss this *qui tam* action on this basis is without merit.

---

[80] Docket 21 at 26. *See* SBA PPP FAQs July 2021, *supra* note 21, at 15 (Question 31).

[81] *Schneider*, 151 F.3d at 1197 n.1.

[82] Docket 17-1 at 33–29.  In support of their argument, Defendants cite only to *United States ex rel. Zafirov v. Fla. Med. Assocs., LLC,* Case No. 8:19-CV-01236-KKM-SPF, 2024 WL 4349242 (M.D. Fla. Sept. 30, 2024).  The Court notes that an appeal in *Zafirov* is pending before the Eleventh Circuit.

[83] *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 759 (9th Cir. 1993) ("We hold that [the *qui tam*] provisions do not exceed the limitations of Article III of the Constitution, nor do they violate the constitutional principle of separation of powers, the Appointments Clause of Article II, or the Due Process Clause of the Fifth Amendment.").  In its Statement of Interest, the United States asserts that Court should reject Defendants' argument that the *qui tam* provision violates Article II of the U.S. Constitution. Docket 23 at 2.  And, as noted in the Statement of Interest, every court of appeals and almost all district courts, including those within the Ninth Circuit, have held that the *qui tam* provision does not violate the Appointments Clause.  Docket 23 at 2–4 (citations omitted).

Case No. 3:24-cv-00276-SLG, *Feduccia v. I.C.E. Services, Inc., et al.*
Order re Motion to Dismiss
Page 19 of 23

## IV. Public Disclosure Bar

Defendants' final argument is that Relator is not an "original source" of material information that is not already publicly disclosed.[84]

The FCA's public disclosure rule bars an FCA action brought by a private individual if the allegations were "publicly disclosed," unless the individual is an "original source" of the information.[85] The public disclosure bar in the FCA provides:

> The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed—
>
> > (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;
> >
> > (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or
> >
> > (iii) from the news media,
>
> unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.[86]

To determine whether to dismiss a relator's *qui tam* action under the public disclosure bar, a court "must assess whether (1) the disclosure at issue occurred through one of the channels specified in the statute; (2) the disclosure was public;

---

[84] Docket 17-1 at 41–43.

[85] *See* 31 U.S.C. § 3730(e)(4)(A).

[86] *Id.*

Case No. 3:24-cv-00276-SLG, *Feduccia v. I.C.E. Services, Inc., et al.*
Order re Motion to Dismiss
Page 20 of 23

and (3) the relator's action is substantially the same as the allegation or transaction publicly disclosed."[87]

In their motion to dismiss, Defendants assert that Relator's claims are barred because he is not an "original source" of information.[88]  Defendants maintain that I.C.E.'s PPP loan information "was publicly disclosed on PandemicOversight.gov, the federal government's website that provides extensive information on PPP loan applications, recipients, and loan resolution."[89]

Relator responds that the public disclosure bar does not apply because as a shareholder of the holding company of Pt Arctic Fund, Relator had access to the private annual and audit reports that were not publicly available online or through government sources, as shown by the "Strictly Private and Confidential" warnings on those reports.[90]   Relator maintains that the public information on the government's PandemicOversight.gov website "is very basic and gives no indication of the PPP fraud alleged by Relator."[91]

In their reply, Defendants contend that the public disclosure bar does apply because the information in the reports that Relator cites to "does not provide the

---

[87] *Silbersher v. Valeant Pharms. Int'l, Inc.*, 89 F.4th 1154, 1163 (9th Cir. 2024) (citation and internal quotation marks omitted); *see also* 31 U.S.C. § 3730(e)(4)(A).

[88] Docket 17-1 at 41).

[89] Docket 17-1 at 42.

[90] Docket 21 at 41; *see also* Docket 1 ¶ 14. The reports include "financial statements, KPMG audits, budget projections, and commentary on I.C.E.'s operational performance, internal liquidity, and enterprise value." Docket 21 at 13.

[91] Docket 21 at 40.

Case No. 3:24-cv-00276-SLG, *Feduccia v. I.C.E. Services, Inc., et al.*
Order re Motion to Dismiss
Page 21 of 23

government with any additional information it needs to determine the key question at issue, namely, whether the certifications were made in good faith."[92]   And Defendants maintain that the Complaint does not "plausibly allege[] how any of the information in the report is not already available to the government."[93]

The Complaint adequately pleads how Relator obtained access to these non-public documents.[94]  However, the Complaint does not adequately allege how the confidential annual reports prepared for Pt Arctic Fund's investors contain more information about I.C.E. than what was available through PandemicOversight.gov or any public source on the issue of I.C.E's economic uncertainty.[95]  Thus, Relator may file an amended complaint that clearly identifies the information gleaned from those reports that is relevant to whether I.C.E.'s economic uncertainty certification was truthful that is additional to what Relator characterizes as  "the scant information the government previously had."[96]

---

[92] Docket 26 at 21–23. The Court notes that other district courts have held that the PandemicOversight.gov website qualifies as a "federal report" under the public disclosure bar. *See United States ex rel. Relator, LLC v. Kootstra*, Case No. 1:22-CV-00924-TLN-CDB, 2024 WL 3666470, at *4 (E.D. Cal. Aug. 6, 2024); *United States v. Kellog*, Case No. 23:CV-118-CAB-BLM, 2024 WL 4887531, at *3 (S.D. Cal. Nov. 25, 2024); *United States ex rel. Relator LLC v. Erskine*, Case No. 22:CV-1158-LL-AHG, 2025 WL 796621, at *4 (S.D. Cal. Feb. 25, 2025).

[93] Docket 26 at 22.

[94] Docket 1 ¶¶ 14, 40, 51, 54, 61–63, 65, 68; Docket 21 at 12–13.

[95] The Complaint does not clearly cite to the reports. Relator only filed them with his opposition. *See* Docket 22-1 (2019 Annual Report); Docket 22-2 (2020 Annual Report); Docket 22-3 (2021 Annual Report); and Docket 22-4 (2023 Audit Report).

[96] Docket 21 at 41.

Case No. 3:24-cv-00276-SLG, *Feduccia v. I.C.E. Services, Inc., et al.*
Order re Motion to Dismiss
Page 22 of 23

## V. Leave to Amend

When a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'"[97]  Here, the Court finds that Relator may be able to cure the deficiencies in the Complaint that have been identified in this order.  Therefore, leave to amend is warranted as to Counts 1, 2, and 4.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss Relator's Complaint at Docket 17.  Count 3 is dismissed without leave to amend. The Court grants Relator leave to amend as to Counts 1, 2, and 4.  Relator may file an amended complaint no later than thirty (30) days from the date of this order.  Defendants' response to the amended complaint is due no later than twenty-one (21) days after Relator files an amended complaint.[98]

DATED this 21st day of November, 2025, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[97] *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co.*,806 F.2d at 1401).

[98] Fed. R. Civ. P. 12(a)(1)(b)(5).

Case No. 3:24-cv-00276-SLG, *Feduccia v. I.C.E. Services, Inc., et al.*
Order re Motion to Dismiss
Page 23 of 23

Case 3:24-cv-00276-SLG     Document 49     Filed 11/21/25     Page 23 of 23